Armstrong, J.
Shawn Orndorff and Ronald Davis
appeal their convictions for first degree burglary, second degree assault, second degree child assault, and unlawful possession of firearms. Orndorff challenges the sufficiency of the evidence to convict him of child assault, arguing that because he never pointed his gun at the child, the State failed to prove he intended to frighten him. Davis contends that the trial court denied him the right to impeach the principal victim with evidence of his statement that he was going to “get Orndorff back for turning him in” to the drug task force. The defendants also raise numerous issues in pro se briefs. Finding no reversible error, we affirm.
FACTS
On June 27, 2002, 13-year-old E.N. and his older half-brother, B.K., were spending the evening with E.N.’s father, Kenneth Nordby. E.N. and B.K. were downstairs playing a video game in the living room; Nordby and Lorina Coble were upstairs visiting with friends.
When B.K. answered a knock at the front door, two men pushed past him, causing him to fall to the floor. The *776 smaller man wore a black leather jacket and carried a pistol. The taller man carried a rifle. B.K. screamed because the smaller man had “a pistol right in [his] face.” 3 Report of Proceedings (RP) at 263. E.N. also saw the smaller man point the pistol at B.K. The taller man with the rifle wore a Levi-style jacket and pants and had a “star-spangled banner” bandanna. 3 RP at 288.
When Nordby heard B.K. scream, he started down the stairs. As he descended, Nordby saw a man with an “American flag” bandanna around his face coming up the stairs carrying a .22 rifle. 3 RP at 168-69. Nordby jumped down the stairs, grabbed the rifle, and struggled with the man. Nordby heard someone screaming that they were going to kill him and he felt a pistol against his neck. After unsuccessfully wrestling with the two men, Nordby lay face down on the floor as the men commanded. The taller man asked where Coble was and then hit Nordby in the head with the rifle butt, causing profuse bleeding. At some point, the taller man pulled the bandanna down from his face and Nordby recognized him as Shawn Orndorff, who had been to his house in the past to sell him musical equipment. Later, in court, Nordby identified Davis as the smaller man with the pistol.
From the living room, E.N. saw Davis point his pistol at Nordby and heard Orndorff say “[y]ou know what we want, give it now.” 3 RP at 289. Orndorff moved the rifle up and down and E.N. then saw blood coming from Nordby’s head. After ordering E.N. and B.K. to lie on the ground, Orndorff told E.N. “[d]on’t worry, no reason to get hurt.” 3 RP at 302-04. Orndorff and Davis left after 911 dispatch returned Coble’s aborted call.
Law enforcement officers located Davis in a church parking lot. With the help of his K-9 police dog, a deputy sheriff found Orndorff hiding in the woods near the church. A vehicle search yielded a semiautomatic pistol, ammunition for the pistol and for a .22 caliber rifle, and an American flag-style bandanna. The officers never found a rifle. After police brought them to the church, Nordby, B.K., and E.N. *777 identified Orndorff and Davis as the men who had entered their home.
According to Orndorff, he and Davis drove to the home so he could talk with Nordby. When he knocked on the door, a young boy opened the door and stepped aside to let them in. Nordby then attacked Orndorff, injuring his head in the altercation. Orndorff left the house once police had been summoned; he hid in the woods because of an outstanding arrest warrant.
The State charged Orndorff and Davis with one count of first degree burglary, three counts of second degree assault, and one count of second degree child assault, each with a firearm allegation, and second degree unlawful possession of a firearm. Each charge also carried an accomplice allegation. The State also charged Davis with first degree unlawful possession of a firearm. The court later dismissed the count charging assault against Coble and the accomplice allegation for Orndorff’s unlawful possession of a firearm charge. The jury convicted Orndorff and Davis of first degree burglary, second degree assault, and second degree child assault and found that they were armed with firearms during the crimes. The jury also convicted Orndorff and Davis of second and first degree unlawful possession of a firearm, respectively.
ANALYSIS
Right to Confrontation
The trial court allowed Kenneth Nordby to testify that Coble told him she saw a man with a pistol downstairs, saw both men leave, she tried to call 911, and was panic-stricken. The court admitted this hearsay evidence under the excited utterance exception. Orndorff contends that admitting this testimony violated his confrontation rights under the Sixth Amendment to the United States Constitution.
*778 Until the Supreme Court decided Crawford v. Washington, 541 U.S. 36,124 S. Ct. 1354,158 L. Ed. 2d 177 (2004), hearsay statements made by unavailable declarants were admissible if an adequate indicia of reliability existed, i.e., they fell within a firmly rooted hearsay exception or bore a “particularized guarantee [ ] of trustworthiness.” Ohio v. Roberts, 448 U.S. 56, 66, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980), overruled in part by Crawford, 124 S. Ct. at 1371. The excited utterance exception is one such “firmly rooted” exception. State v. Woods, 143 Wn.2d 561, 595, 23 P.3d 1046 (2001). A statement is an excited utterance and therefore not subject to exclusion on hearsay grounds if it “relat[es] to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.” ER 803(a)(2).
In Crawford, the Court held that admitting the tape recorded statement the defendant’s wife gave to police violated the defendant’s Confrontation Clause rights. Crawford, 541 U.S. at 68. Under Crawford, “[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers’ design to afford the States flexibility in their development of hearsay law... as would an approach that exempted such statements from Confrontation Clause scrutiny altogether.” Crawford, 541 U.S. at 68. But if testimonial hearsay evidence is at issue, the confrontation clause requires witness unavailability and a prior opportunity for cross-examination. Crawford, 541 U.S. at 68.
Crawford did not comprehensively define “testimonial.” The Court explained that the confrontation clause applies to witnesses who “bear testimony” such as “a ‘solemn declaration or affirmation made for the purpose of establishing or proving some fact.’ ” And this includes “ ‘ex parte in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially.’ ” Crawford, 541 U.S. at 51 (citations omitted). The term also includes *779 prior testimony at a preliminary hearing, before a grand jury, at a former trial, and police interrogations. Crawford, 541 U.S. at 68.
Coble’s excited utterance fits into none of these categories. It was not a declaration or affirmation made to establish or prove some fact; it was not prior testimony or a statement given in response to police questioning; and Coble had no reason to expect that her statement would be used prosecutorially. Rather, Coble’s statement was a spontaneous declaration made in response to the stressful incident she was experiencing. We hold that Coble’s excited utterance was not testimonial and, therefore, not precluded by Crawford's confrontation clause analysis.
A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
Bridgewater and Van Deren, JJ., concur.
Reconsideration denied September 27, 2004.
Review denied at 154 Wn.2d 1010 (2005).